In re INTERNATIONAL MARINE TOWING, INC., Petitioner.

No. 80–5191.

United States Court of Appeals, Fifth Circuit.

April 25, 1980.

---

Toole, Taylor, Moseley & Joyner, Robert E. Warren, Jacksonville, Fla., for petitioner.

David G. Hanlon, Tampa, Fla., for M/V King's Challenger.

Alan B. Vlcek, Jacksonville, Fla., for First MS Nat'l Bank.

On Petition for Writ of Mandamus to the United States District Court for the Middle District of Florida.

Before GEE, RUBIN and POLITZ, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The district court transferred an in rem action from the Middle District of Florida to another district in which an in personam action between the same parties involving the same issues is pending. Mandamus is sought to prevent the transfer on the ground that the statute permitting transfer of cases to a more convenient forum, 28 U.S.C. § 1404, does not apply to proceedings in rem. Concluding that Congress did not intend so narrowly to circumscribe the discretion of the courts to further the public interest both by avoiding duplicate proceedings and by conducting trials in the most convenient forum, we decline to intervene and thus to frustrate the basic purpose of Congress in passing § 1404(a). *See Continental Grain Co. v. The Barge FBL–585*, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960).

First National Bank has a ship mortgage on the tug, KING'S CHALLENGER. The vessel was in Jacksonville, Florida. First National brought an in rem action to foreclose its mortgage, a warrant of arrest was issued and the vessel was seized in the Middle District of Florida. International Marine Towing, Inc., which had chartered the vessel from its owners, Southern Leasing Partners, intervened in the foreclosure proceeding asserting a maritime lien for financial unseaworthiness and breach of the charter. First National and SLP settled their differences, but IMT's claim was not resolved. The district judge then set a $50,000 bond to secure IMT, retaining jurisdiction to increase the bond if it subsequently appeared that IMT's claim exceeded $50,000. First National and SLP were dismissed from the proceeding.

Meanwhile IMT had filed an in personam action against SLP in the Eastern District of Louisiana seeking damages for breach of charter. Almost a year later, SLP sought transfer of the in rem action to that district so that the two proceedings could be consolidated. IMT concedes that Louisiana is the more convenient forum; both actions arise out of the same transaction, involve the same issues and require the same witnesses and other evidence. IMT, however, opposed on the ground that the court had no authority to transfer the case. After the district judge had ordered transfer, IMT sought reconsideration and, for the first time, moved in the alternative for an increase in the amount of the bond before the transfer

was effected. The district judge refused to reconsider the amount of the bond stating that the motion for its increase was not before the court when he had ordered the transfer. In the meanwhile, its settlement agreement having failed, First National has filed a new action to foreclose its mortgage and has again seized the KING'S CHALLENGER in Jacksonville.

Section 1404(a)[1] permits a civil action to be transferred to any other district "where it might have been brought." IMT contends that this is a limitation impliedly prohibiting transfer to a district where the action could not have been brought. It argues that an in rem proceeding can be filed only where the vessel can be found and that this action could not have been brought in Louisiana. It concludes, therefore, that the action may not be transferred. This argument is based not only on a literal reading of the statute but the confinement of its reach to the bounds thus defined.

In *Continental Grain Co. v. The Barge FBL–585*, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960), the Supreme Court refused to read § 1404(a) as being narrowly limited to its precise terms. It sanctioned the transfer of two actions, one in personam, the other in rem, to a more convenient forum even though the in rem action could not originally have been brought in the transferee court. In authorizing the transfer the court noted that, although a judgment in the action would be "technically enforceable against the barge as an entity as well as [in that case] its owner," an in rem proceeding is only an alternative way to bring the owner into court. "[T]he practical economic fact of the matter is that the money paid in satisfaction of [any judgment] will have to come out of the barge owner's pocket—including the possibility of a levy upon the barge even had the cargo owner not prayed for 'personified' *in rem* relief." Id. at 26, 80 S.Ct. at 1475, 4 L.Ed.2d at 1545.

IMT seeks to distinguish *Continental Grain* on the basis that the solvency of the barge owner was not in question in that case; here it is, and, therefore, the bond provides its only real protection. This concerns only the relative equities to be considered in making a transfer; if the statute is to be read literally, it no more authorizes the *Continental Grain* transfer than it sanctions this one. Cf. *Construction Aggregates Corp. v. S. S. Azalea City*, 399 F.Supp. 662 (D.N.J.1975) (permitting transfer of an in rem proceeding if the defendant agreed to admit in rem jurisdiction in the transferee court). But see 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 3843, at 205–06 & n.13 (1976); 1 Moore's Federal Practice, ¶ 0.145 [6.–4], at 1654–55 (1979) (commenting that a decision permitting transfer "is as disloyal to *Hoffman v. Blaski* [363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960)] as it is practical.") We conclude that the result is sanctioned by the purpose of the statute and that the transfer was proper.

As in *Continental Grain*, the substance of what must be done in the two suits to adjudicate the rights of the parties is identical. The two matters are but inseparable parts of a single controversy and a single civil action. "To construe § 1404(a) this way merely carries out its design to protect litigants, witnesses and the public against unnecessary inconvenience and expense, not to provide a shelter for *in rem* admiralty proceedings in costly and inconvenient forums." 364 U.S. at 27, 80 S.Ct. at 1475, 4 L.Ed.2d at 1545.

The district judge did not abuse his discretion in refusing to consider the alternative motion to increase the bond, belatedly brought after transfer had been ordered. If the security of the worth of the vessel is important to IMT, it can intervene in the new foreclosure proceeding, taking its proper rank there. Or it may elect to prosecute its in personam claim in conjunction with

---

1. § 1404. *Change of venue*

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

its in rem claim against the bond. We intimate no opinion concerning whether the Florida court still had jurisdiction over First Mississippi, which had posted the bond, to require an increase, or whether the transferee district court would have authority to order an increase in the bond, an issue not yet presented.

For these reasons, the writ is DENIED.