**TEYSEER CEMENT COMPANY, a foreign corporation; Qatar National Insurance and Reinsurance Company, a foreign insurance corporation, Plaintiffs-Appellants,**

v.

**HALLA MARITIME CORPORATION, a foreign corporation, Defendant-Appellee.**

No. 84–3901.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 5, 1985.

Decided July 14, 1986.

Richard Nielsen, David Danielson, Danielson, Harrigan, Smith & Toffefson, Seattle, Wash., for plaintiffs-appellants.

Thomas J. McKey, Bogle & Gates, Seattle, Wash., for defendant-appellee.

Before PREGERSON and WIGGINS, Circuit Judges, and WEIGEL,* District Judge.

WIGGINS, Circuit Judge.

Teyseer Cement Company and Qatar General Insurance and Reinsurance Company (collectively referred to as Teyseer) appeal the district court's orders dismissing for improper venue Teyseer's admiralty action and affirming the dismissal upon reconsideration. We agree with the contention of appellee Halla Maritime Corporation (Halla) that the appeal is moot and accordingly dismiss it.

BACKGROUND

Teyseer, a resident of Qatar, contracted with Halla, a resident of South Korea, for the shipment of raw cement from South Korea to Qatar aboard the M/V RHODIAN SAILOR, a vessel under time charter to Halla. Halla issued a bill of lading that contained a foreign court selection clause providing that any disputes would be litigated in South Korea "to the exclusion of the jurisdiction of the courts of any other country."

The ship sank enroute to Qatar, and the cement was lost. In March 1983, Teyseer filed a complaint in admiralty in the United States District Court for the Western District of Washington to recover damages for the loss of the cement. Pursuant to Rule B(1) of the Federal Rules of Civil Procedure Supplemental Rules for Certain Admiralty and Maritime Claims [1] and Local Rule

---

* Honorable Stanley A. Weigel, Senior United States District Judge for the Northern District of California, sitting by designation.

1. Rule B(1) then provided:
   With respect to any admiralty or maritime claim in personam a verified complaint may contain a prayer for process to attach the defendant's goods and chattels, or credits and effects in the hands of garnishees named in the complaint to the amount sued for, if the defendant shall not be found within the district. Such a complaint shall be accompanied by an affidavit signed by the plaintiff or his attorney that, to the affiant's knowledge, or to the best of his information and belief, the defendant cannot be found within the district.

115(c) of the Western District of Washington, the district court clerk issued a summons and process of attachment, causing the United States Marshal to attach the ATLAS CHALLENGER, a ship owned by Halla and then docked in the Western District of Washington. The only jurisdiction asserted by Teyseer over Halla or its assets was that which may have been acquired by reason of the attachment of the ATLAS CHALLENGER.

Halla obtained the release of the ATLAS CHALLENGER by submitting a letter of undertaking to Teyseer in which Halla agreed that it would enter an appearance in the district court, without prejudice to its right to assert any defenses, including improper forum. *See* Fed.R.Civ.P.Supp. Rules for Certain Admir. and Maritime Claims Rule E(5). Halla also stated in the letter that: (1) "the value of the security given as represented by this letter shall be the value of the vessel ATLAS CHALLENGER, ... or U.S. $1,800,000 whichever is less"; and (2) "this letter ... shall stand with the same force and effect as if the ATLAS CHALLENGER had remained attached under process and had been thereafter duly released upon a release bond to respond to your complaint."[2] In October 1983, the district court entered an order establishing the value of the ATLAS CHALLENGER as $855,250 and limiting the security to that amount.

Halla then entered a restricted appearance under Rule E(8) of the Federal Rules of Civil Procedure Supplemental Rules for Certain Admiralty and Maritime Claims. Rule E(8) provides:

> An appearance to defend against an admiralty and maritime claim with respect

to which there has issued ... process of attachment and garnishment ... may be expressly restricted to the defense of such claim, and in that event shall not constitute an appearance for the purposes of any other claim with respect to which such process is not available or has not been served.

Halla moved to dismiss the action for improper venue, relying on the clause in the bill of lading requiring that all actions be brought in South Korea.[3] Halla also counterclaimed for damages, alleging that attachment in the United States breached this clause. Teyseer opposed the motion and requested alternatively that the district court at least maintain the security represented by the letter of undertaking to ensure satisfaction of a judgment of the courts of Qatar, where it had filed an action against Halla. The district court enforced the foreign court selection clause, dismissed the action, and released the security that the letter represented. The district court stated that no authority permitted it to attach Halla's property for the sole purpose of acquiring security for enforcement of a judgment obtained in another forum. Halla later dismissed its counterclaim voluntarily.

Teyseer filed a timely motion under Fed. R.Civ.P. 59(e) to alter or amend the judgment of dismissal and a motion for reconsideration. It sought reconsideration of that part of the district court's dismissal order denying Teyseer's request that the court maintain the security for the enforcement of a future Qatar judgment. Upon reconsideration, the district court withdrew its previous ruling that it was powerless to

---

When a verified complaint is supported by such an affidavit the clerk shall forthwith issue a summons and process of attachment and garnishment. In addition, or in the alternative, the plaintiff may, pursuant to Rule 4(e), invoke the remedies provided by state law for attachment and garnishment or similar seizure of the defendant's property. Except for Rule E(8) these Supplemental Rules do not apply to state remedies so invoked. The Rule has since been amended, effective August 1, 1985, to eliminate doubts as to its consistency with the principles of procedural

due process. *See* Fed.R.Civ.P. Supp.Rules for Certain Admir. and Mar. Claims advisory committee note (West Supp.1985). The amendment is irrelevant to the issues in this appeal.

2. Upon its release from attachment, the ATLAS CHALLENGER departed the jurisdiction of the Western District.

3. Halla also based its motion on *forum non conveniens.* The district court did not reach that issue.

maintain the security for execution of a foreign judgment. *Teyseer Cement Co. v. Halla Maritime Corp.*, 583 F.Supp. 1268, 1270 (W.D.Wash.1984). It recognized that under *Polar Shipping, Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 632 (9th Cir.1982), it had discretion to maintain the security. *Teyseer*, 583 F.Supp. at 1270. It held, however, that the language of the foreign court selection clause deprived it of "jurisdiction"[4] to maintain the security. *Id.* at 1271. It did not withdraw its order releasing the security represented by the letter undertaking.

Teyseer filed this timely appeal. It neither sought a stay of the order releasing the security nor filed a supersedeas bond. It has informed thisd court in its reply brief that on March 12, 1985, it obtained a default judgment in a Qatar court against Halla in the amount of $1,149,260.

ANALYSIS

Halla contends that the appeal is moot for two independent reasons. First, because Teyseer neither obtained a stay of the order dismissing the security nor filed a supersedeas bond, Halla maintains that the district court lost jurisdiction over Halla when it released the security. Second, Halla contends that Teyseer fails on appeal to challenge the dismissal of its action and seeks only the reinstatement of the security. Without a challenge to the underlying dismissal, Halla argues, no case or controversy exists because a plaintiff cannot invoke the Rule B attachment procedure solely for the purpose of acquiring security.

We hold, in agreement with Halla's first argument, that this appeal is moot, and accordingly have no occasion to consider Halla's second contention.

*Failure to Obtain Stay or to File Supersedeas*

A claim is moot if it is one in which the issues are no longer live. *Sample v. Johnson*, 771 F.2d 1335, 1338 (9th Cir.1985). We cannot take jurisdiction over a claim as to which no effective relief can be granted.

*United States v. Geophysical Corp.*, 732 F.2d 693, 698 (9th Cir.1984). If mootness appears, we have no recourse but to dismiss the appeal.

Here, Halla contends that Teyseer's failure to obtain a stay of the execution of the order vacating the undertaking or to post a supersedeas bond moots the appeal. Halla relies on a series of decisions that dealt with in rem proceedings under Rule C of the Federal Rules of Civil Procedure Supplemental Rules for Certain Admiralty and Maritime Claims (Rule C), not attachment proceedings under Rule B. In an action commenced by an in rem arrest of a vessel under Rule C, unless the plaintiff obtains a stay of execution of the judgment, release of the vessel or its substitute security generally renders moot an appeal of the district court's judgment. *Alyeska Pipeline Service Co. v. Vessel Bay Ridge*, 703 F.2d 381, 384 (9th Cir.1983), *cert. dismissed*, 467 U.S. 1247, 104 S.Ct. 3526, 82 L.Ed.2d 852 (1984); *American Bank of Wage Claims v. Registry of the District Court of Guam*, 431 F.2d 1215, 1218 (9th Cir.1970). In Rule C in rem actions, however, the res is itself the defendant. *See Alyeska*, 703 F.2d at 384. Removal of the res from the court's control generally terminates the court's jurisdiction over that res because nothing remains before the district court on which to impose a decision. *Farwest Steel Corp. v. Barge Sea-Span 241*, 769 F.2d 620, 621 (9th Cir.1985); *Alyeska Pipeline*, 703 F.2d at 384.

The rule in *Alyeska* does not apply directly to proceedings commenced by a writ of attachment under Rule B. Indeed, in *Alyeska* we suggested in dictum that different rules may apply in proceedings other than those under Rule C: "When plaintiffs choose to proceed in rem they must take the necessary precautions to ensure that jurisdiction of the court is preserved. Plaintiffs always have the option of bringing these actions in personam as well as in rem, which would foreclose the loss of jur-

---

**4.** The court below was referring to jurisdiction in a nontechnical sense. A foreign court selection clause relates to proper venue rather than jurisdiction, and would not by its own force affect the power of the district court to maintain the security in a proper case.

isdiction." *Id.* at 385. The critical question here is the nature of the jurisdiction the district court acquired over Halla by reason of the attachment of the ATLAS CHALLENGER under Rule B.

*Nature of Rule B Jurisdiction*

In *Polar Shipping, Ltd. v. Oriental Shipping Corp.*, we confronted a mootness challenge in an action that, as here, was commenced through a writ of attachment under Rule B(1). Polar Shipping Limited (Polar), the owner of the vessel, sued the vessel's charterers for breach of charter. Polar secured the charterers' appearance by attaching money owed as freight charges to the charterers. Polar asserted no basis of jurisdiction over the charterers other than by the attachment. The charterers moved to dismiss the action based on a foreign court selection clause. Alternatively, they argued that Rule B's attachment procedure violated their fifth amendment right to procedural due process. The district court dismissed the complaint based on the foreign court selection clause and vacated the writ of attachment. Polar appealed, and filed a stipulation in which the parties agreed that Polar would deposit $125,000 into the registry of the district court and that the charterers' freight charges would remain attached pending the appeal. Like Teyseer, Polar challenged on appeal only the district court's vacation of the writ of attachment. As here, the appellee charterers argued that the vacation of the writ of attachment rendered moot the appeal. We held that the appeal was not moot, "not only because the funds remain[ed] under attachment, but also because [the charterers] would continue to be adversely affected by the writ of attachment in the event of a remand." *Id.*, 680 F.2d at 634.

Although there are many similarities between *Polar Shipping* and the instant case, we do not believe the conclusion in *Polar Shipping* that the appeal was not moot controls our decision here. Critical to the finding in *Polar Shipping* that the appeal was not moot was the continued jurisdiction over both the attached freight charges and the deposit into the registry of the court. The parties had by stipulation provided substitute security to which the jurisdiction of the district court attached pending appeal.

By contrast, nothing remained in the present case upon which the jurisdiction of the district court, or this court, could attach after Halla's obligation represented by the undertaking was dismissed. Under such circumstances, an appeal in an action in rem or quasi in rem is rendered moot. *See Mills v. Green*, 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895).

██ However, Teyseer argues that this is an in personam action, and that the release of the security is therefore irrelevant. It is true that an attachment under Rule B is available only "[w]ith respect to any admiralty or maritime claim in personam." Rule B(1). But the filing of an admiralty or maritime in personam *claim* is not the equivalent of in personam jurisdiction over a party.[5] Attachment provides a limited substitute for the latter and the release of attached property affects only this latter jurisdiction.

A cause of action for damages because of the loss of cargo is normally in personam in the sense that the amount of damages to be awarded is not limited to the value of a particular asset if personal jurisdiction over the defendant exists. If personal jurisdiction cannot be obtained, however, and the personal appearance of a defendant is secured only by the arrest of his assets, the in personam character of the cause of action is largely meaningless. To our knowledge, all courts and commenta-

---

**5.** In *Polar Shipping*, we characterized as in personam the jurisdiction the court acquired *over a defendant* whose appearance has been secured by writ of attachment. *Id.* at 630. We cited *Swift & Co. Packers v. Compania Columbiana del Caribe*, 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950) and 7A Moore's *Federal Practice*, ¶ B.02 at B–51 (2nd Ed.1981) for that proposition. We believe both authorities more properly stand for the proposition that a writ of attachment is proper in an admiralty or maritime in personam cause of action, but that such a writ does not itself confer in personam jurisdiction over any party.

tors that have squarely addressed the question have stated that the nature of the jurisdiction the court acquires by a Rule B attachment is properly denominated "quasi in rem" because any judgment rendered is limited to the value of the attached property. *E.g., Belcher Co. v. M/V Maratha Mariner*, 724 F.2d 1161, 1164 (5th Cir.1984) (characterizing as "quasi in rem" actions that are begun by attachment when the court has no jurisdiction over the defendant's person but has jurisdiction over the thing belonging to the defendant); *Maryland Tuna Corp. v. MS Benares*, 429 F.2d 307, 311 (2d Cir.1970) (proceeding begun under Rule B(1) is "quasi in rem" in nature); *Engineering Equipment Co. v. S.S. Selene*, 446 F.Supp. 706, 709 n. 9 (S.D.N.Y. 1978) ("Although the jurisdiction achieved through maritime attachment is sometimes denominated in personam, there is no doubt that any judgment rendered is quasi in rem in nature and is limited to the value of the attached property."); *East Asiatic Co. v. Indomar, Ltd.*, 422 F.Supp. 1335, 1341–42 (S.D.N.Y.1976) (same); 7A J. Moore & A. Pelaez, *Moore's Federal Practice* ¶ B.02, at B–103 n. 6 (2d ed.1983) (hereinafter *Moore's*) ("[E]xecution in proceedings commenced by maritime in personam attachments in which the defendant has not been personally served or appeared cannot exceed the value of the attached property."); Comment, "The Use of Maritime Attachment as a Jurisdictional Device," 12 Cornell Int'l L.J. 329, 332–33 (1979) (citation omitted) ("It should be emphasized that, despite the language in Rule B limiting its scope to claims brought "in personam," the Rule is in fact a classic example of *quasi in rem* jurisdiction ....").[6]

We agree with the foregoing authority. When the sole basis of jurisdiction over a defendant is quasi in rem, the court derives its jurisdiction over the defendant solely from its authority over the attached property or its substitute security. Once that property or its substitute security is released, the court has no jurisdiction over

the defendant. By contrast, when the defendant has been served with process or has entered a general appearance, the presence or absence of the attached property is irrelevant to the question of the court's personal jurisdiction over the defendant. *See, e.g., United States v. An Article of Drug Consisting of 4,680 Pails*, 725 F.2d 976, 982 (5th Cir.1984) (characterizing as in personam a Rule C in rem proceeding in which claimant generally appeared).

Thus, Teyseer's argument that its action is in personam, and that the release of the security is irrelevant, misses the mark. The filing of a purely in personam action does not determine jurisdiction over the defendant. Limited jurisdiction over the defendant may be acquired by the seizure of his assets. In that event, the in personam action takes on characteristics of an action in rem, and with respect to the consequences of a release of the security, is guided by in rem precedents.

### Effect of Halla's Appearance

■ Teyseer also argues that by appearing, asserting the forum selection clause as a defense, and by defending the judgment on this appeal, Halla in effect generally appeared, subjecting itself to in personam jurisdiction. This argument is unpersuasive. Although a defendant may waive any objections to personal jurisdiction or venue by consent or conduct, *Hoffman v. Blaski*, 363 U.S. 335, 343, 80 S.Ct. 1084, 1089, 4 L.Ed.2d 1254 (1960), we are unable to conclude that Halla did or said anything in this case to waive its objections to jurisdiction or venue.

Halla expressly entered a "restricted appearance" under Rule E(8). As noted earlier, the language of that Rule permits a defendant to restrict its appearance to the defense of the claim as to which there has issued process of attachment and garnishment. *See* Moore's ¶ E.16, at E–767. We have no reason to question the validity of restricted appearances, which have long

---

**6.** Indeed, at oral argument counsel for Teyseer acknowledged that if the district court were to reinstate the security, Teyseer could execute a foreign judgment in the Western District of Washington only to the extent of the value of the property in the district.

been a part of admiralty proceedings. *See* Currie, *Attachment and Garnishment in the Federal Courts*, 59 Mich.L.Rev. 337, 379 n. 178 (1961). "It is clear that a defendant or owner entering a restricted appearance to an in rem or quasi in rem maritime proceeding can vigorously defend the merits of the claim against him without converting his restricted appearance into a general appearance." *Moore's* ¶ E.16[1], at E–772. Rule E(8) permits a defendant whose appearance is obtained by attachment to avoid the dilemma of either defending the attached property by generally appearing and thus risking a loss greater than the value of the property, or letting it go by default. *Id.* at E–768.

Although not raised by Teyseer, we note that Halla in its amended answer asserted a counterclaim, alleging breach of the forum selection clause in its contract with Teyseer. Assertion of a counterclaim may result in a waiver of objection to in personam jurisdiction depending on whether the counterclaim is permissive or compulsory and upon when the counterclaim is raised. *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1330 n. 1 (9th Cir.1984), *cert. denied*, — U.S. ——, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985). In *Gates Learjet* we noted that assertion of a compulsory counterclaim does not constitute waiver of jurisdictional defenses. We observed that this court had not decided whether assertion of a permissive counterclaim constitutes a waiver but held that a permissive counterclaim asserted after a motion to dismiss for lack of personal jurisdiction or in the same pleading that raises lack of personal jurisdiction as a defense does not waive jurisdictional defenses. *Id.*

In this case there is no need to determine whether Halla's counterclaim is permissive or compulsory in order to resolve the question of whether the counterclaim waived any objection to personal jurisdiction. Halla did not move for dismissal based on lack of personal jurisdiction, but it had no reason to do so. Halla entered a restricted appearance below to allow it to appear and protect its interest in the res that had been attached. Halla's restricted appearance in-

dicated that it did not consent to personal jurisdiction. We hold that by entering a restricted appearance Halla objected to in personam jurisdiction as effectively as it could have through a motion to dismiss on that ground, and that its subsequent assertion of a counterclaim did not result in a waiver of that objection. *See Gates Learjet*, 743 F.2d at 1330 n. 1.

## CONCLUSION

We hold that when, as here, a plaintiff (1) asserts no basis for personal jurisdiction over a defendant other than the defendant's appearance, secured by a Rule B attachment; (2) the district court dismisses the action and releases the security; and (3) the defendant fails to obtain a stay of execution of the judgment or to post a supersedeas bond, the district court has been rendered powerless to impose a judgment in the event of a remand. We therefore dismiss the appeal as moot.

